**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Fitzgerald Watkins,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-16-00168-PHX-DLR<br><br>**ORDER** |

Plaintiff applied for supplemental security income on November 15, 2011, claiming disability since the filing date. (AR 22, 166-74.) After state agency denials, Plaintiff testified at a hearing before an Administrative Law Judge on May 16, 2014. (AR 22-41.) The ALJ issued a written decision one month later, finding Plaintiff not disabled within the meaning of the Social Security Act. (AR 15-35.) This became Defendant's final decision when the Appeals Council denied review. (AR 1-3.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.) After receipt of the administrative record (Doc. 10), the parties briefed the issues for review concerning Plaintiff's alleged mental disability (Docs. 17, 19, 22). For reasons stated below, Defendant's decision is reversed and the case remanded for an award of benefits.

## STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the Commissioner's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the decision if it is based on legal error or not supported by substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and such relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Where "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. The claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing past work. If the claimant meets his burden at step three, he is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets his burden at step four, the Commissioner must show at the fifth and final step that the claimant is able to perform other work given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v).

Plaintiff has met his burden at steps one and two: he has not worked since the alleged date of disability and has severe intellectual disability, depressive disorder, psychotic disorder, and polysubstance dependence in partial remission. (AR 24-25.) The ALJ found at step three that Plaintiff's impairments do not meet or equal a listed impairment. (AR 25-28.) The ALJ then determined that Plaintiff has the RFC to perform a range of medium work limited to simple, repetitive tasks in jobs that are not fast-paced

and do not require working as a team or with the public. (AR 28-35.) Based on this RFC and testimony from a vocational expert, the ALJ determined at step four that Plaintiff is not disabled because he can perform his past job as a construction worker. (AR 36.)

Plaintiff challenges the step three determination, arguing that the ALJ erred in concluding that his intellectual disability does not meet listing 12.05B. (Doc. 17 at 8-11.) Plaintiff further argues that the ALJ erred by failing to consider certain "paragraph B" criteria in determining RFC (*id.* at 11-18), and by making the RFC determination without citing to supporting evidence (at 18-20). Defendant counters that the ALJ reasonably found that Plaintiff's intellectual disability does not meet the requirements of listing 12.05B (Doc. 19 at 6-10), and the RFC determination was proper and supported by substantial evidence (at 10-15). As explained below, the Court finds that the ALJ committed reversible error at step three and the case should be remanded for an award of benefits.

**I. The Step Three Determination and Listing 12.05B**

The listing of impairments, set forth in an appendix to the social security regulations, is comprised of various impairments to fifteen body systems. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The impairments described in the listings are considered so severe they are presumed disabling regardless of a person's age, education, or work experience. 20 C.F.R. §§ 416.920(d), 416.925(a); *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). In order to meet a specific listing, the claimant must present evidence satisfying the diagnostic description of the impairment and any additional criteria or requirements set forth in the listing. 20 C.F.R. § 416.925(d); *Young*, 911 F.2d at 184.[1]

Listing 12.05 sets forth the requirements for intellectual disability (formerly known as "mental retardation" under the old rules and as "intellectual disorder" under the

---

[1] The listings for mental disorders have been revised, effective January 17, 2017. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). In reviewing agency decisions, however, district courts are to apply the rules that were in effect at the time the final decision was issued. *Id.* at 66138 & n.1. In reviewing the decision in this case, the Court will apply the rules in effect when the decision became final on November 25, 2015. (AR 1.)

- 3 -

new ones). The listing contains an introductory paragraph setting forth the diagnostic description of the impairment as (1) significantly subaverage general intellectual functioning with (2) deficits in adaptive functioning initially manifested during the developmental period, that is, before age 22. The listing also contains four sets of criteria, subparagraphs A through D, which address the required level of severity for the condition to be presumed disabling. To meet Listing 12.05, the claimant must show that his impairments satisfy both the diagnostic description of intellectual disability in the introductory paragraph and any one of the four criteria in subparagraphs A through D. 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [twelve-month] duration requirement.").

Subparagraph B, the one at issue here, requires a valid verbal, performance, or full scale IQ of 59 or less in order for the intellectual disability to be presumed disabling. Here, Plaintiff had a full scale IQ of 56, which is extremely low according to Dr. Alysha Bundy, the state agency psychologist who administered the IQ test. (AR 411.) Plaintiff contends that the ALJ erred in concluding that the IQ score is not valid and Plaintiff had no "significant" deficits in adaptive functioning. (Doc. 17 at 9.) The Court agrees.

### A. Validity of the IQ Score

The ALJ found that Plaintiff's IQ of 56 does not reflect his true cognitive functioning given evidence of his adaptive functioning such as his ability to maintain personal hygiene, perform household chores, use the telephone and public transportation, obtain a driver's license, and shop. (AR 27.) But Dr. Bundy explicitly found that the IQ score was valid despite the fact that Plaintiff could perform these routine tasks. (AR 409-11.) Indeed, the evidence the ALJ cites to show that Plaintiff can engage in routine daily activities is the report of Dr. Bundy. (AR 27, 32.)

The fact that Plaintiff can perform simple tasks and might not have significant deficits in adaptive functioning does not invalidate the results of the IQ test designed to capture his intellectual functioning, which refers to the mental capacity to learn, reason,

plan, and solve problems.  Courts have held that routine daily activities such as those performed by Plaintiff "are not necessarily inconsistent with [intellectual disability] and are therefore not valid grounds for rejecting an IQ score." *Lewis v. Astrue*, No. C-06-6608-SI, 2008 WL 191415, at *7 (N.D. Cal. Jan. 22, 2008); *see Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1014 (D. Or. 2011) (noting that "courts have held that daily activities such as reading, driving, and cleaning are not necessarily inconsistent with mental retardation"); *Schuler v. Astrue*, No. CV-09-2126-PLA, 2010 WL 1443892, at *6 (E.D. Cal. 2010) (ALJ erred in rejecting validity of IQ score where the claimant functioned independently as an adult because this was not necessarily inconsistent with his mental impairment); *Brown v. Sec'y of HHS*, 948 F.2d 268, 270 (6th Cir. 1991) (daily activities such as using public transit, shopping, cleaning, and doing laundry are not inconsistent with a low IQ score).

The regulations require a narrative report accompanying the IQ test that "comment[s] on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D6a.  Dr. Bundy provided the required narrative, which addresses in detail Plaintiff's developmental history, functional limitations, and daily activities.  (AR 408-14.)  Dr. Bundy specifically found that Plaintiff's "cooperation and general attitude was appropriate with sufficient effort" and his "approach during the testing was adequate for evaluation purposes."  (AR 410-11.)  She concluded, in her professional medical opinion, that the "results of [the IQ] testing are considered valid."  (AR 411.)

The ALJ may not "substitute [her] own judgment for competent medical opinion," and she "must not succumb to the temptation to play doctor and make her own independent medical findings."  *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. June 13, 2006).  This is particularly true where, as in this case, the examining doctor's opinion is not contradicted by another physician and the ALJ purported to give "significant weight" to the opinion because it was "consistent with the totality of the

- 5 -

medical record." (AR 34.)

The Court concludes that the ALJ erred in substituting her own judgment for that of Dr. Bundy's, and otherwise failed to provide clear and convincing reasons for finding Plaintiff's IQ of 56 to be invalid.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (the ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician").  Based on his extremely low IQ score, Plaintiff has shown that his general intellectual functioning is sufficiently severe for purposes of Listing 12.05B.[2]

### B.  Deficits in Adaptive Functioning

In order to meet Listing 12.05, Plaintiff must have deficits in adaptive functioning, which generally refers to how well a person can "cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007).  More specifically, adaptive functioning is the "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 329 (1993).

The ALJ found that the medical records contain no evidence of "significant" deficits in adaptive functioning.  (AR 27.)  The introductory paragraph of Listing 12.05, however, "requires evidence that deficits in adaptive functioning exist, not evidence that a claimant has no adaptive functioning skills." *McGrew v. Colvin*, No. 13-cv-01909-SI, 2015 WL 1393291, at *7 (D. Or. Mar. 25, 2015).  Contrary to the ALJ's assertion, the record contains objective evidence of deficits in adaptive functioning, and Plaintiff's RFC – as determined by the ALJ – incorporated such deficits.  (AR 28.)  The ALJ found that Plaintiff is unable to work with others as part of a team or in jobs that involve public

---

[2] Defendant's reliance on *Low v. Colvin* (Doc. 19 at 9), is misplaced.  In *Low*, the ALJ was faced with conflicting IQ scores and rejected the lower one given the claimant's "ability to mentally function as demonstrated by successfully taking and completing college based classes over an extended period of time." 2014 WL 4968285, at *6 (E.D. Cal. Sept. 30, 2014).  Here, by contrast, Plaintiff attended special education classes and dropped out of high school after the ninth grade.  (AR 52.)

contact.  *Id.*; *see McGrew*, 2015 WL 1393291, at *7 (RFC that precluded claimant from working with others and having contact with the public evidenced deficits in adaptive functioning").

In her psychological report, Dr. Bundy opined that Plaintiff has difficulties with interpersonal functioning due to trust issues and suspiciousness, has limited ability to maintain socially appropriate behavior, and does not respond well to supervision and criticism.  (AR 410, 414.)  Dr. Bundy also noted that Plaintiff appears to resist change and that with ongoing pressure, acute anxiety symptoms and persecutory thoughts might surface.  (AR. 412.)  Clearly, the record is not devoid of objective medical evidence showing some deficits in adaptive functioning.  The ALJ erred in finding otherwise.

The ALJ noted that Plaintiff was able to take care of his own basic needs and could perform routine chores (AR 27), but "possessing average living skills . . . does not indicate that a claimant does not have deficits in adaptive functioning." *McGrew*, 2015 WL 1393291, at *7; *see Lewis*, 2008 WL 191415, at *7 ("Claimant's ability to take care of herself and her children, though certainly physically and emotionally demanding, is no indication of the intellectual demand of those activities and is not inconsistent with being mentally retarded."); *Huber v. Astrue*, No. CV-10-8043-PCT-DGC, 2010 WL 4684021, at *4 (D. Ariz. Nov. 12, 2010) (ALJ erred in finding claimant's adaptive functioning inconsistent with intellectual disability merely because she could read, had a driver's license, and was able to handle her own hygiene and keep her house clean).

In finding that Plaintiff "did not suffer from significant adaptive deficits, the [ALJ] overemphasized [Plaintiff's] perceived adaptive strengths." *Moore v. Texas*, --- S. Ct. ---, 2017 WL 1136278, at *11 (Mar. 28, 2017).  Listing 12.05, however, "focuses the adaptive-functioning inquiry on adaptive *deficits*." *Id.*  In short, the ALJ erred in concluding that there is no record evidence showing deficits in adaptive functioning.

**C.     Manifestation of the Intellectual Disability in the Developmental Period**

IQ tests or other contemporary evidence of intellectual disability before age 22 is not required to establish onset of the impairment during the developmental period.  *See*

- 7 -

*Lewis*, 2008 WL 191415, at *7. Rather, the record generally "should contain some evidence that permits an inference that the impairment existed before age 22 and is not of recent origin due to a traumatic event or some other changed circumstance." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010). Moreover, "courts have held that a valid qualifying IQ score obtained by the claimant after the age of 22 creates a rebuttable presumption that the claimant's [intellectual disability] began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime." *Schuler*, 2010 WL 1443892, at *6 (collecting cases).

The ALJ declined to apply the presumption and found that Plaintiff's low IQ score does not reflect his true cognitive functioning now or before the age of 22. (AR 27.) The ALJ erred in so finding.

Nothing in the record suggests that Plaintiff's subaverage intellectual functioning was of recent origin. To the contrary, there is evidence that Plaintiff was in special education classes before dropping out of school after the ninth grade. The ALJ asked Plaintiff if he was in regular or special education classes, and he stated that he took classes "out in the special ed building." (AR 52.) Consistent with this testimony, Dr. Bundy's report notes that Plaintiff experienced academic struggles in school and received suspensions for fighting with classmates (AR 409), indicating potential deficits in adaptive functioning. Plaintiff also testified that he had some difficulty reading magazines and could spell only simple words. (AR 53.)

Because the severity of intellectual disability is established by subparagraphs A through D, the Court "does not assess severity in considering whether a claimant meets the requirements of Listing 12.05's introductory paragraph." *McGrew*, 2015 WL 1393291, at *6. The introductory paragraph only requires evidence that "*supports* onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added). Circumstantial evidence can be sufficient and may include "difficulties with reading and writing, attendance of special education classes, and dropping out of school." *McGrew*, 2015 WL 1393291, at *6; *see Pedro*, 849 F. Supp. 2d at 1011-12 (claimant may

show early onset under Listing 12.05 with circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history").

Here, there is evidence that Plaintiff has trouble reading, attended special education classes, dropped out of school after the ninth grade, and engaged in unskilled work in the construction industry. (AR 52-53, 68). This is sufficient evidence to support the onset of Plaintiff's intellectual disability before age of 22. *See Markle*, 324 F.3d at 189 (evidence that the claimant took special education classes, dropped out in tenth grade, and had a limited work history supported a finding that onset of intellectual disability occurred before age 22); *Payne v. Astrue*, No. CV-08-1753-PHX-LOA, 2010 WL 654319, at *11 (D. Ariz. Feb. 23, 2010) (the claimant's "participation in special education classes, poor academic performance, and low-skilled work history imply evidence of deficits in adaptive functioning during the developmental period"); *Walberg v. Astrue,* No. C08–0956–JCC, 2009 WL 1763295, at *9 (W.D. Wash. June 18, 2009) (participation in special education constitutes evidence of deficits in adaptive functioning during the developmental period); *Hurst v. Colvin*, No. 14-cv-222-SDD, 2015 WL 5349358, at *6 (M.D. La. Aug. 19, 2015) (evidence that the claimant participated in special education and performed poorly in school supported onset of the impairment during the developmental period); *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) (evidence supported manifestation of impairment before age 22 including the claimant's low-grade dropout and participation in special education).

In summary, the ALJ committed reversible error at step three by rejecting Plaintiff's valid IQ of 56, finding that he did not have deficits in adaptive functioning, and concluding that no evidence supports onset of his intellectual disability during the developmental period.

**II. Remand**

Having found that the ALJ erred, the Court has discretion to remand the case for further proceedings or for an award benefits. *See Reddick v. Chater*, 157 F.3d 715, 728

(9th Cir. 1998). This Circuit has "repeatedly held that a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). This rule recognizes the importance of expediting disability claims, especially where it is evident from the record that benefits should be awarded. *Id.*

Here, Plaintiff applied for supplemental security income more than five years ago, and the record is fully developed. Plaintiff has shown at step three of the evaluation process that he meets the listing for intellectual disability. He therefore is "presumed disabled, and no further inquiry is necessary." *Huber*, 2010 WL 4684021, at *6. The proper remedy is a remand for payment of benefits. *See Pedro v. Astrue*, 849 F. Supp. 2d at 1016-17 (remanding for benefits where the claimant met listing 12.05); *Gomez*, 695 F. Supp. 2d at 1063 (same).[3]

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for payment of benefits. The Clerk shall enter judgment accordingly and terminate the case.

Dated this 31st day of March, 2017.

Douglas L. Rayes
United States District Judge

---

[3] Given this ruling, the Court need not address Plaintiff's other challenges to Defendant's decision.